UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10037-GAO

UNITED STATES OF AMERICA,
Plaintiff,

v.

JOSE RUVALCABA,
Defendant.

OPINION AND ORDER
January 7, 2021

O'TOOLE, S.D.J.

Following a jury trial in 2008, Jose Ruvalcaba was convicted of conspiracy to distribute and to possess with intent to distribute at least 500 grams of methamphetamine and conspiracy to launder money. The government had filed an information pursuant to 21 U.S.C. § 851 noting Ruvalcaba's two prior felony drug convictions. Accordingly, pursuant to 21 U.S.C. § 841(b)(1)(A), Ruvalcaba was sentenced after conviction to a mandatory term of life imprisonment.

Ruvalcaba has moved for a "compassionate release" reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b)(1) of the First Step Act of 2018 ("FSA"). Pub. L. No. 115-391, 132 Stat. 5194 (2018). The government opposes the motions.

Prior to the passage of the FSA, compassionate release was only available to a federal inmate if the Director of the Bureau of Prisons ("BOP") filed a motion with the sentencing court requesting a sentence reduction for the inmate. The FSA amended § 3582(c)(1)(A) to authorize the sentencing court as well to entertain such a motion filed by the inmate and to grant such relief, provided that the inmate had satisfied an administrative exhaustion requirement:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors in section 3553(a) to the extent that they are applicable, if it finds that – (i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. §3582(c)(1)(A).[1]

A relevant Sentencing Commission policy statement is § 1B1.13 of the Guidelines, "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>     (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

Id. The accompanying commentary elucidates the phrase "extraordinary and compelling reasons":

---

[1] It is undisputed that Ruvalcaba's first Motion for Reduction in Sentence (dkt. no. 507) complied with the administrative exhaustion prerequisite. Ruvalcaba's Opposed Supplemental Motion for Reduction in Sentence (dkt. no. 512) presented arguments regarding his susceptibility to COVID-19 that were not raised in his initial motion, which had been filed before the spread of the pandemic became apparent. It is fair to regard the second motion as simply advancing a newly available additional argument in support of the relief requested in the original motion so that the exhaustion predicate did not apply to the later submission.

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
> > (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> > (ii) The defendant is—
> > > (I) suffering from a serious physical or medical condition,
> > > (II) suffering from a serious functional or cognitive impairment, or
> > > (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

<u>Id.</u>

Neither § 1B1.13 nor the commentary have been amended following the enactment of the FSA, and therefore they do not directly address the FSA's extension of authority to the sentencing court to grant compassionate release. Nevertheless, the substance of the policy statement does not depend on the identity of the decision maker, and courts addressing post-FSA motions under § 3582(c)(1)(A) have consulted the policy statement and commentary in deciding whether the

statutory standard for compassionate release has been met. See, e.g., United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) (stating that "the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change"); see also United States v. Bucci, 409 F. Supp. 3d 1, 2 (D. Mass. 2019).

In his moving papers, Ruvalcaba relies on the general categorical phrase "extraordinary and compelling circumstances" expressed both in the statute and the Sentencing Commission's policy guidance. He does not contend that he qualifies for a sentencing reduction under the specifically expressed categories of age or family circumstances. Rather, he argues that "extraordinary and compelling reasons" for a sentencing reduction exist because he has serious physical and medical conditions and as a result has a substantially diminished ability to provide self-care in a correctional facility environment. Separately, he contends that the FSA's amendments to what qualifies as a serious drug felony and the reduction of the mandatory minimum sentences prescribed in 21 U.S.C. § 841(b) constitute an "extraordinary and compelling" reason to reduce his sentence.

Ruvalcaba has a history of well documented health concerns. He was diagnosed in 2005 (before his trial) with congestive heart failure, cardiomyopathy, and severe left ventricular dysfunction. His medical history includes the implantation of an internal defibrillator in 2006 (also before his trial). However, the internal defibrillator was explanted in 2014, apparently on medical judgment that it was unnecessary. He is in the BOP's "chronic care" program and, as judged necessary by care providers, has been seen and treated by the medical staff for various complaints.

It is not necessary to discuss here his medical history in detail. The Court has reviewed the extensive medical records he has submitted. The more recent records, from 2018 forward, support

a conclusion that the BOP authorities are able to address his medical issues adequately. His most recent physical examination that is disclosed in the records submitted occurred on June 10, 2019. The report of that examination noted that his "cardiovascular" examination was "within normal limits." (Mem. of Reasons in Supp. of Mot. for Reduction in Sentence, Ex. B at 24, 26 (dkt. no. 511-1) (under seal).) Older records from a prior BOP facility do indicate symptomatic indications of concerning cardiovascular issues, but the more recent records from FCI Butner where he is currently incarcerated actually support a conclusion that his cardiovascular issues are being successfully controlled.

Significantly, the Court has not found in the most recent medical records, for the years 2018 and 2019, any specific evidence that Ruvalcaba is significantly more susceptible to COVID-19 by reason of the *current* condition of his health than other inmates.[2] While his prior medical history is not to be ignored, the medical records from Butner reflect that his prior serious cardiovascular issues have recently been adequately controlled and that he receives what appears to be appropriate attention to his health needs from the medical staff.

Ruvalcaba separately contends that changes made by the FSA to the penalty structure established in 21 U.S.C. § 841 reducing the length of mandatory minimum sentences for certain drug crimes themselves constitute an "extraordinary and compelling" reason for reduction of his sentence. This Court disagrees.

---

[2] The Centers for Disease Control and Prevention ("CDC") has identified that certain underlying health conditions may put an individual at an increased risk for severe illness from COVID-19. See CDC, Do I Need to Take Extra Precautions Against COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last updated Jan. 4, 2021). However, Ruvalcaba has not presented any specific evidence to support a finding that his current health would meet the criteria for extraordinary and compelling reasons for compassionate release.

As a general rule, newly enacted laws are ordinarily given only prospective effect unless Congress specifically directs otherwise. See Lattab v. Ashcroft, 384 F.3d 8, 14 (1st Cir. 2004). There is nothing "extraordinary" about applying that general rule to the FSA's amendment of § 841. See Pub. L. 115-391, § 401, 132 Stat. 5194. Congress did choose to make certain changes in the FSA explicitly retroactive. See United States v. Gashe, No. CR07-4033-LTS, 2020 WL 6276140, at *3 (N.D. Iowa Oct. 26, 2020) (noting that § 404 is the only part of the FSA that allows a court to retroactively impose a reduced sentence in cases of certain crack-cocaine offenses for defendants convicted before August 3, 2010.) Otherwise, "the sentencing reform provisions of the FSA benefit only individuals who were convicted following the effective date of the Act, *i.e.*, December 21, 2018." United States v. Marks, 455 F. Supp. 3d. 17, 21 (W.D.N.Y. 2020); see also FSA §§ 401(c), 402(b), 403(b).

The interpretive canon "*expressio unius est exclusio alterius*" is applicable here. Congress expressly made only some amendments retroactive. It is therefore a conventional inference that it did not intend retroactivity to be given to other changes. This Court recognizes that some courts have taken the FSA's reduction of statutory mandatory minimums to be an "extraordinary and compelling" reason for retroactively altering an inmate's sentence downward. In this Court's view, those cases are effectively establishing a judicial exception to the general rule of prospective effect of legislative enactments: those enactments are prospective unless a judge later decides they should be retroactive. Some of the cases note the inmate's rehabilitation or similar factors and essentially reevaluate the original sentence in light of those subsequent occurrences. Not only does that violate the general rule of prospectivity, but it also ignores the general rule imposed by § 3582(c) itself that a "court may not modify a term of imprisonment once it has been imposed," except as

specifically authorized in that statute. Declaring an imposed sentence to be "too long" in light of later developments is plainly inconsistent with that provision.

For these reasons, the Court concludes that Ruvalcaba has not shown that there exist the necessary "extraordinary and compelling reasons" to justify compassionate release under § 3582(c)(1). His pending motions for that relief (dkt. nos. 507 & 512) are both DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
Senior United States District Judge