```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


 UNITED STATES OF AMERICA,        )
                  Plaintiff,      )
                                  )
 vs.                              )  No. 05-CR-10037-GAO-4
                                  )
 JOSE RUVALCABA,                  )
                  Defendant.      )




         BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
            UNITED STATES DISTRICT COURT JUDGE
                 MOTION HEARING BY TELEPHONE




          John Joseph Moakley United States Courthouse
                       One Courthouse Way
                  Boston, Massachusetts 02210


                       September 2, 2020
                          3:07 p.m.



                Kathleen Mullen Silva, RPR, CRR
                     Official Court Reporter
          John Joseph Moakley United States Courthouse
                 One Courthouse Way, Room 7209
                   Boston, Massachusetts 02210
                 E-mail: kathysilva@verizon.net

            Mechanical Steno - Computer-Aided Transcript
```

```
 1   APPEARANCES:
 2
 3         United States Attorney's Office
 4         AUSA Jennifer Hay Zacks
 5         John Joseph Moakley U.S. Courthouse
 6         Boston, Massachusetts 02210
 7         617.748.3100
 8         for Plaintiff
 9
10         Brandon Sample PLC
11         Brandon Sample, Esq.
12         P.O. Box 250
13         Rutland, Vermont 05702
14         802.444.4357
15         for Defendant
16
17
18
19
20
21
22
23
24
25
```

```
 1                    P R O C E E D I N G S
 2            THE CLERK:  We're here on a motion hearing on Jose
 3   Ruvalcaba, which is 05-10037.
 4            THE COURT:  Good afternoon, counsel.  This is Judge
 5   O'Toole.  Good afternoon, Mr. Ruvalcaba.
 6            THE DEFENDANT:  Hello.
 7            THE COURT:  We'll have argument on -- there are five
 8   pending motions, three of which are pro se motions that are
 9   really repeats of prior efforts and relief, but the recent
10   motions are 507 and 512, motions filed on Mr. Ruvalcaba's
11   behalf by Mr. Sample.  So I'll hear your argument as to those
12   matters.
13            Do you want to go ahead, Mr. Sample?
14            MR. SAMPLE:  Thank you, Your Honor.  As we indicated
15   in our filing, Your Honor, Mr. Ruvalcaba has moved the court to
16   exercise its authority under 18 U.S.C. 3582 and grant him
17   compassionate release.  Mr. Ruvalcaba was sentenced at a time
18   when the court was required to impose a mandatory life sentence
19   as a result of the government's filing of a 21 U.S.C. 851
20   information notice in the case.
21            The law has since changed.  As a result of the First
22   Step Act, other courts have recognized the changes that have
23   been brought about by the First Step Act as applied to 924(c),
24   and I believe most recently a court in Iowa has also extended
25   that same kind of rationale to apply to affording relief to a
```

1  defendant who was sentenced like Mr. Ruvalcaba to a mandatory
2  life sentence, a sentence that he would not be subject to
3  today; and, Your Honor, we believe that the balance of the
4  factors, when you consider 1B1.13, first, we believe that the
5  court has the discretion to be able to decide what constitutes
6  extraordinary and compelling circumstances.  We believe that
7  the change in the law, combined with Mr. Ruvalcaba's
8  rehabilitation, his efforts to improve himself since he's been
9  incarcerated, do constitute extraordinary and compelling
10 circumstances to revisit the sentence in this case.
11        Also, we would note that Mr. Ruvalcaba has a history
12 of medical issues.  There does remain a serious present threat
13 to his health, and we believe, Your Honor, that on balance that
14 the 3553 factors also weigh in support of the court exercising
15 its discretion to reduce Mr. Ruvalcaba's sentence.
16        We ultimately would merely ask the court to reduce the
17 sentence to a term of imprisonment that it believes is
18 appropriate, and we don't request a particular term.  We do
19 note that Mr. Ruvalcaba has been incarcerated for a significant
20 period of time already, and that he should be afforded the
21 opportunity to rejoin society at some point.
22        There have been some other facts that I believe that
23 the court would want to know.  Mr. Ruvalcaba had a very tragic
24 loss of his daughter last year due to a drug overdose, and, you
25 know, this kind of -- I think further has reinforced his

```
 1   personal commitment to change in his life.  He has remarked to
 2   me that he hopes that some day that he would have the
 3   opportunity to visit her graveside, and as things currently
 4   stand that's not something that's going to happen.
 5            So based on that, Your Honor, and the filings that we
 6   previously submitted, I won't belabor further, and we would
 7   merely ask the court to grant Mr. Ruvalcaba a sentence
 8   reduction.
 9            THE COURT:  I'm sorry.  I was on mute.  I'm sorry.
10            The second motion, 512, added to the first the ground
11   of the COVID virus present to some degree in the institution.
12   Do you want to address that further, or do you rest on the
13   papers with respect to that?
14            MR. SAMPLE:  On the filing, Your Honor.
15            THE COURT:  Okay.  Ms. Zacks.
16            MS. ZACKS:  Thank you, Your Honor.  The government
17   opposes the motion for compassionate release.  I guess the
18   first thing that I would do is draw a distinction between the
19   two motions, that is, the one that was filed that does not
20   include the COVID as a justification and the one that does.
21            As to the first, the government takes the position
22   that there is exhaustion, because Mr. Ruvalcaba filed back in
23   December of last year, 2019, a petition with the warden.  And
24   so he exhausted his administrative remedies, because 30 days
25   has run since the receipt of that motion.
```

1            As to the second motion, which includes COVID, it's
2    the government's position that there has not been exhaustion.
3    Now, I freely acknowledge that it's also complicated, and the
4    government further takes the position that the court does not
5    have to address this issue because the case could be decided
6    solely on the merits, but I just want to lay out the
7    government's position on exhaustion here.
8            As the court knows, there's a requirement in the
9    statute that the defendant has to exhaust administrative
10   remedies is one way, or 30 days has to elapse from the receipt
11   by the warden of the request by the defendant.
12           Now here, as I mentioned, a request was submitted to
13   the warden.  However, because of when it was submitted,
14   understandably, in December, it did not mention COVID.  Now,
15   unless, which would be a factor that I'm not aware of and I did
16   not see it in the file, the defendant has submitted a
17   subsequent request that does reference COVID, it would be the
18   position of the government that as to that particular aspect,
19   administrative remedies have not been exhausted, and the policy
20   underlying that is pretty evident.  You want to give the Bureau
21   of Prisons the first chance to consider these kind of -- the
22   full facts, especially since the Bureau of Prisons is tasked
23   with sort of balancing the different fact issues and the safety
24   of the inmates, the safety of the public, various interests in
25   rehabilitation, punishment.  So they should have the chance to

1    consider it before it comes to the court, as the statute
2    requires.
3            But I do recognize that this is an issue that has
4    split the courts.  Certain courts have taken the position that
5    this exhaustion requirement is jurisdictional.  Certain courts
6    have taken the position that it's not.  Similarly, some courts
7    have said that a prior petition that mentions a general health
8    issue but doesn't mention COVID is not sufficient to trigger
9    the petition -- exhaustion requirement.  Others have found that
10   it is.  And it's our position that the court doesn't have to
11   reach this issue because the merits of this case are absolutely
12   clear.  But just to be, you know -- to sort of -- full
13   disclosure, I want to flag the issue for the court and state
14   more fully the government's position.
15           As to the merits, I think that the standard is clear.
16   The defendant would have to show extraordinary compelling
17   reasons.  The court then would have to consider the standard
18   sentencing factors contained in 3553(a) as well as whether the
19   defendant is a danger to the community.
20           Sort of walking through this sort of step by step, the
21   government has conceded, acknowledged in many cases where the
22   defendant has the medical condition that meets the requirement
23   that's set out in the CDC website where the defendant -- people
24   who have that condition are at increased risk of complications
25   from COVID, that that could satisfy the extraordinary and

1   compelling reasons prong.

2         Here, however, based on the facts, and as we said in
3   our brief, it's very unclear to me that the defendant, who
4   obviously has had medical issues, the theoretical conditions in
5   the past will meet that requirement.  The first is the CDC
6   website says that people with certain conditions are at
7   increased risk.  Sort of the CDC website breaks it down into
8   different categories of people.  And people with the condition
9   of serious heart conditions are at extreme risk.

10        Now, it's clear that in the past the defendant did
11   have a very severe heart condition.  However, it's ambiguous
12   whether that history of heart condition, to what extent it's
13   persisting into the future and qualifies as a serious heart
14   condition.  My understanding, based on the medical records, is
15   that the defendant's pacemaker was removed in 2014 because his
16   heart condition had improved, and that his most recent tests,
17   sonogram, showed that his heart function was in the low normal
18   range.  So for that reason I think that it's not clear that
19   his medical conditions qualify under the standard.

20        He's also alleged hypertension, which I think there's
21   similarly evidence for in his medical records.  Hypertension is
22   a different category of risk under the CDC website.  Those
23   defendants, rather than are at increased risk, the CDC website
24   qualifies them as might be at increased risk.  So, in other
25   words, it's sort of a much lesser condition and less -- puts

1   him at less risk, and makes it harder for him to reach that
2   high threshold of an extraordinary and compelling reason.
3           I will note that the facility where he's been moved
4   to, Butner Medium 1, at one point, as my brother counsel aptly
5   pointed out, did have a fairly serious outbreak of COVID.
6   However, I checked the site this morning, and it looks to me
7   like currently the number, at least according to the BOP
8   website, the number of inmates currently testing positive are
9   three inmates.  So I think that the facility itself -- and I
10  will note that it has a number of -- a fairly large number,
11  almost 200 inmates who have recovered from COVID.  So there is
12  evidence that there was at one point a more extensive outbreak,
13  but now it seems the facility has, perhaps due to the extensive
14  safety protocols, other measures that BOP has been taking, many
15  of which are outlined in our filing, have gotten the situation
16  under control so this does not appear to put the defendant at
17  extreme risk or risk, frankly, based on the numbers -- just
18  purely on the numbers from the BOP website seems to be
19  pretty -- fairly low.
20          The other factors that, you know, the court would
21  consider are the standard sentencing factors contained in
22  3553(a), and those I think weigh against granting this motion.
23  For one thing, I think looking -- why did the defendant receive
24  a life sentence?  One thing, it was a very serious crime.  It
25  was a large scale methamphetamine distribution organization

1  combined with a serious and sophisticated money laundering
2  operation.  The defendant was found to be in possession or to
3  have in his room in the residence where he was staying multiple
4  firearms, at least one of which was loaded and I think one of
5  which was stolen.  The defendant was found to be a leader of
6  the organization, and as I mentioned the money laundering was
7  sophisticated.  All these things go to sort of the nature of
8  the crime, the seriousness of the crime, the danger to the
9  public, which is another factor that the court should consider
10 and weigh against granting the motion.
11         And the last thing that I would say is this:  Although
12 it is true that the standards under the First Step Act for
13 evaluating what qualifies as a predicate to give you an
14 enhancement, which in his case enhancement to a mandatory life
15 sentence, have changed, it's clear from the First Step Act that
16 those changes in that are not retroactive, while other
17 portions, of course, of the First Step Act are, and that
18 Congress was clearly completely able to make portions of the
19 First Step Act retroactive.  The fact they chose not to make
20 this particular portion retroactive suggests that this court
21 should not import that retroactivity into this section of the
22 Act.
23         For those reasons the government opposes the pending
24 motions.
25         THE COURT:  All right.  Mr. Sample, do you want to

1  respond?

2  MR. SAMPLE: Your Honor, yes, just a few points.

3  On the issue of exhaustion, I believe that the bulk of
4  the courts that have taken up that issue is that there's no
5  necessity for defendant to renew a request for exhaustion on
6  another point that might also support the court granting
7  compassionate release, that really to satisfy the requirements
8  of the statute that the defendant need only make the request to
9  the warden, and here it is undisputed that he did that.
10 Because the original request is properly before the court, I
11 believe that the court can also consider the impact of COVID in
12 deciding whether to grant the relief.

13 Mr. Ruvalcaba's health, as the government notes,
14 previously it's been pretty bad, and it's acknowledged in our
15 filings that his health did, in fact, improve. But as noted in
16 our supplemental motion, his history, his medical history does
17 continue to show that he's having problems with ejection
18 fraction, which relates to how his heart pumps blood, and that
19 it's well below normal limits, and the CDC's website
20 specifically recognizes the kind of heart conditions that
21 Mr. Ruvalcaba has a history of as being a significant risk
22 factor for death if he is, in fact, exposed to COVID.

23 Counsel for the government is correct that the FCI
24 Medium 1 at one point was a real hot spot for the virus in the
25 Bureau of Prisons, and it does appear that the number of cases

there has dissipated, but we don't -- I will say that we don't know fully what the Bureau of Prisons is still doing with respect to testing at that facility. So the reduction in numbers is not necessarily indicative of the more limited risk of Mr. Ruvalcaba catching the virus and potentially succumbing as a result.

And finally, Your Honor, just to really kind of generally speak to the change in the law and the court's ability to take into account that if it was resentencing Mr. Ruvalcaba today that it would not be required to impose a mandatory life sentence, the fact that Congress in the context of the First Step Act itself decided that that provision did not have a direct remedy within the First Step Act to apply for relief does not mean that the court is thereby prohibited from exercising its broad authority under 3582(c)(1)(A). I think the courts, as we noted like in the *Marks* case, we provided that citation to the court, that granted relief for a defendant who had a series of 924(c) convictions, that the court has now been unchained in its discretion to be able to make these kinds of determinations. And I would respectfully submit, Your Honor, that if the court was sentencing Mr. Ruvalcaba today, that it's very unlikely that the court would impose the same life sentence.

And I think that the best representation, when we look at the history and characteristics of Mr. Ruvalcaba, you look

1  at how he has conducted himself since he's been in prison, and
2  he has, as far as I know, Your Honor, done quite well, and he's
3  taken a lot of programs and, you know, it's the best
4  representation for what the court might expect if it was, in
5  its discretion, to grant his sentence reduction.
6          Based on the arguments we've made here today and in
7  our filings, Your Honor, we would urge the court to grant the
8  motions and reduce Mr. Ruvalcaba's sentence as the court deems
9  appropriate.
10         THE COURT:  All right.  Thank you, counsel.  I
11 appreciate it.  We'll take the matter under advisement.  Thank
12 you for attending by telephone.
13         MR. SAMPLE:  Thank you, Your Honor.
14         THE COURT:  This concludes the hearing.
15         MS. ZACKS:  Thank you.
16 (Proceedings adjourned at 3:26 p.m.)

```
 1                    C E R T I F I C A T E
 2
 3
 4   UNITED STATES DISTRICT COURT )
 5   DISTRICT OF MASSACHUSETTS    )
 6
 7
 8          I certify that the foregoing is a correct transcript
 9   from the record of proceedings taken September 2, 2020 in the
10   above-entitled matter to the best of my skill and ability.
11
12
13
14
15   /s/ Kathleen Mullen Silva                        4-11-21
16
17   Kathleen Mullen Silva, RPR, CRR                  Date
     Official Court Reporter
18
```